IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MICHAEL JOHN NIKOLS,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | ORDER AND OPINION GRANTING MOTION TO VACATE SENTENCE AND TO ALLOW FOR WITHDRAWAL OF PLEA PURSUANT TO 28 U.S.C. § 2255<br><br><br>Case No. 2:06-CV-00889 PGC |

On October 18, 2005, Petitioner Michael John Nikols pleaded guilty to one count of conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1). He was sentenced to on that same day to 70 months in prison. Almost a year later — on October 16, 2006 — Mr. Nikols filed a petition under 28 U.S.C. § 2255 to set aside his plea, claiming that his guilty plea was invalid because the court had participated in plea negotiations. After he filed his motion, the Tenth Circuit handed down additional guidance on what constitutes judicial participation in plea discussions — participation that is forbidden by Federal Rule of Criminal Procedure 11(c)(1). In light of that new guidance, the court has no choice but to grant Mr. Nikols's motion. In particular, when the court placed into the record — with the agreement of

*defense* counsel — the applicable Sentencing Guidelines governing the case, the court transgressed the new limits described by the Tenth Circuit. The court accordingly sets aside Mr. Nikols's plea and will arrange for a trial on the merits.

## BACKGROUND

On November 18, 2004, Mr. Nikols was indicted by a federal grand jury on one count of conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and on one count of possession of one or more firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). The federal charges were brought in lieu of a state court prosecution for the same offenses that had originally been filed in December 2002. The indictment was based on extensive investigation involving wiretaps and surveillance that established Mr. Nikols's involvement in a large-scale cocaine trafficking conspiracy over many years.

Final resolution of the federal indictment was delayed at the behest of Mr. Nikols for various reasons. Of particular importance to the pending petition, Mr. Nikols obtained new defense counsel after his earlier counsel was discharged for a conflict of interest. New defense counsel promptly and energetically appeared in the case, filing significant new motions on Mr. Nikols's behalf. The court set a trial date of December 8, 2005.

On about September 27, 2005, new financial information came to the court's attention suggesting that Mr. Nikols, who had previously been released on bond, might have access to hundreds of thousands of dollars that would permit him to flee to family in Greece. Accordingly, on September 29, 2005, the court ordered Mr. Nikols detained pending trial. In doing so, the court noted the strong evidence against Mr. Nikols on extremely serious charges.

The next day, defense counsel sought a telephonic hearing on the issue of Mr. Nikols's detention. The court held such a hearing, during which the prosecutor and defense counsel — but not Mr. Nikols — participated. After discussing the large sum of cash that Mr. Nikols appeared to have available to him, the court agreed to schedule a further hearing to review the matter. At the same time, prompted by questions about whether Mr. Nikols fully understood his options and their likely consequences, the court concluded:

> THE COURT: Can I raise one other question with you while I have everyone on the phone here?
>
> DEFENSE COUNSEL: Sure.
>
> THE COURT: I have the Probation Office running guidelines calculations on Mr. Nikols' part of figuring out how serious this offense is, they're coming back with something like 25 to 30 years if he's convicted, I'm wondering whether we should put on the record on Tuesday, independent of everything else, that he's aware of the risk he's running and understands that there is no further plea bargain open, and, you know —
>
> DEFENSE COUNSEL: *I think that's a good idea*.[1]

Pursuant to this discussion with defense counsel, the court then sent a follow-up letter to the attorneys on the case confirming that information about the Sentencing Guidelines would be placed into the record:

> On top of the detention issues, I was also planning to place into the record material that might bear on any § 2255 motion that could be filed in the future. In particular, I planned to place on the record whether Mr. Nikols is aware of the time that he likely faces in prison if he goes to trial, as opposed to time he faces if he accepted the plea. That might involve placing, in a sealed submission at sidebar, your information regarding the advice you have provided to the defendant. Because I neglected to do this at the last hearing, I will permit the defendant to enter a plea of guilty, if he so chooses, during tomorrow's hearing, as I have no way of fully

---

[1] Tr. Telephonic Detention Hr'g 12:16–13:2, Sept. 30, 2005 (emphasis added).

confirming that he has been aware of the consequences of rejecting the plea before tomorrow's hearing.  In other words, I am extending the plea deadline through tomorrow to confirm that the defendant is aware of his situation.  After that, as explained previously, absent extraordinary good cause shown, I will not grant any motion by the defendant to enter a plea to reduced charges or by the government to dismiss any of the pending charges in this case.[2]

At a hearing on October 6, 2005, the court continued to consider the skillfully argued defense request to set aside the detention order.  During the lengthy hearing, the parties addressed the issues of the seriousness of the defendant's charged offenses, one of the factors the court is required to consider during a detention hearing.[3]  The court explained its view on the seriousness of the offense with reference to the Sentencing Guidelines:

> Maybe we should talk about the guidelines, I'm sorry to interrupt, but I've been looking at this, if there are more than five kilos involved in this case, and you mentioned the three weapons found in the home, Mr. Madsen and others have indicated that he was organizing all of this, my calculations are that would be a base level of 32, two additional levels for weapons, four additional levels for an organizer, so the seriousness of the charges here is reflected by the fact that the guideline range comes back, if you assume a mid-point of the range, at 264 months, then there's an additional 60 months for the weapons, so that takes it up to 332 months, my calculation is that the defendant, if he goes to trial and is convicted, is looking at around 27 years in prison, which is basically a life sentence given his age.[4]

After further discussion, the court reaffirmed its ruling that Mr. Nikols was a flight risk; the court explained that, with access to hundreds of thousands of dollars and family overseas in Greece, Mr. Nikols might not appear for trial.  At the end of the hearing, the court added:

---

[2] Pet'r Mem. Supp. Mot. Vacate Sentence & Withdraw Plea, Attach. No. 9 at 1 (Docket No. 2, Ex. I).

[3] *See* 18 U.S.C. § 3142(g)(1) ("The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning . . . the nature and circumstances of the offense charged . . . .").

[4] Tr. Detention Hr'g 33:1–33:17, Oct. 6, 2005.

>THE COURT: This is the first time we've talked about some of these guideline issues[.] I'm not going to be involved in the plea discussions in any way, but I think maybe what I'll do is I'll leave — I'm not sure exactly where we are on all the plea discussions, I've talked about closing the deadline off, but I think maybe it should stay open until October 18, would that be a good date for counsel to get back together and kind of see what the case looks like on October 18th.
>
>DEFENSE COUNSEL: That would be great, Your Honor, I would be happy to return.[5]

On October 18, 2005, Mr. Nikols chose to plead guilty to one count of conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1). During the plea colloquy, the court inquired into the plea's voluntariness after confirming that Mr. Nikols understood that he was under oath and subject to prosecution for perjury for any false statements:

>THE COURT: Has anyone threatened you or forced you to get you to plead guilty?
>
>MR. NIKOLS: No, Your Honor.
>
>THE COURT: Are you fully satisfied with the representation of your attorneys . . . ?
>
>MR. NIKOLS: I am fully satisfied.[6]

During the plea colloquy, Mr. Nikols also admitted to being a substantial drug dealer:

>THE COURT: I'm looking at item (a) now, this says, During a period beginning at an unknown time, but at least by March 1st, 2002, and through October 31st, 2002, in the Central Division of Utah, you did conspire . . . together with Richard Madsen, Jose Reynaldo Flores, Anne Atwood, Patty Tsouras, and/or with other persons known and unknown to distribute cocaine; is that true?
>
>MR. NIKOLS: Yes, Your Honor.
>
>THE COURT: In Paragraph (b) it says, more specifically, that you admit that in June of 2002 you agreed with and directed Richard Madsen to travel to El Paso,

---

[5] *Id.* at 56:20–57:5.

[6] Tr. Plea & Sentencing Hr'g 17:1–17:6, Oct. 18, 2005,

>Texas, where he met with Jose Reynaldo Flores for the purpose of obtaining kilogram quantities of cocaine and shipping it back to Utah using Federal Express so that it could be re-sold. You acknowledge that agents observed you picking up a package shipped by Mr. Madsen here to Salt Lake City, and that Mr. Madsen was found with another kilogram of cocaine when he was arrested in El Paso. You admit that this violated the federal law covering the vents here, including being involved with more than 500 grams of cocaine; is that true as well, did you do that?
>
>MR. NIKOLS: Yes, Your Honor.[7]

In addition, the court ensured that Mr. Nikols was aware of the precise nature of the charge to which he pleaded guilty:

>THE COURT: Is that right? I want to make sure that we have exactly the right charge here.
>
>THE PROSECUTION: That is the correct charge, Your Honor, it is conspiracy to distribute more than 500 grams of a controlled substance cocaine.
>
>THE COURT: With respect to that charge that's contained in Count 1 of the Indictment, Mr. Nikols, how do you plead, guilty or not guilty?
>
>MR. NIKOLS: Guilty.
>
>THE COURT: I'm sorry, I didn't hear you.
>
>MR. NIKOLS: I plead guilty, Your Honor.[8]

After the court had accepted the plea, and at the request of the defense, the court immediately held a sentencing hearing and imposed a prison sentence of 70 months. This sentence was a significant downward departure from the applicable sentencing guidelines, but was pursuant to the agreement of the parties.

Almost a year later — on October 16, 2006 — Mr. Nikols filed the pending petition under 28 U.S.C. § 2255 to set aside his plea. The petition asserted in general terms that both the

---

[7] *Id.* at 12:6–13:3.
[8] *Id.* at 18:12–18:22.

court and his defense counsel had coerced him into pleading guilty. Because the factual support for Mr. Nikols's claims was unclear, however, the court found it necessary to direct him to file a sworn statement "'set[ting] forth specific facts which he is in a position to establish by competent evidence'" if he wished to proceed further with his petition.[9]

Accordingly, on May 4, 2007, Mr. Nikols filed an affidavit in which he made, under oath, the following statements (completely at odds with the earlier statements he made under oath at the plea colloquy): "On October 18, 2005, [defense counsel] continued to apply unprecedented pressure on me to take the deal"; "When I stated that the agreement required me to admit to actions that I did not do, [defense counsel] stated that 'sometimes you have to lie to get what you want'"; "I continually reminded [defense counsel] that I had never indicated a desire to accept a plea deal. [Defense counsel] refused to discuss any matters outside of acceptance of the plea agreement"; and "I felt the court and even [defense counsel] to be my adversaries. Further, I lost all confidence that [defense counsel] would zealously represent me at trial."[10]

The court then scheduled a hearing to determine the merits of Mr. Nikols's factual allegations. Before that hearing could be held, however, the Tenth Circuit handed down a new decision regarding judicial involvement in plea discussions. In *United States v. Cano-Varela*,[11] the Circuit interpreted the prohibition of judicial participation in plea discussions contained in

---

[9] Order Submit Aff. 1–2 (Docket No. 13) (quoting *Dalli v. United States*, 491 F.2d 758, 761 (2d Cir. 1974)).

[10] Pet'r Supplemental Aff. Supp. 2255 Mot. 6–7 (Docket No. 19). So that the record is clear, the court believes these derogatory statements about the performance of defense counsel to be untrue. To dispose of the petition, however, it is not necessary to make firm findings on Mr. Nikols' assertions.

[11] No. 06-8020, 2007 WL 2285861 (10th Cir. Aug. 10, 2007).

Federal Rule of Criminal Procedure 11(c)(1).  The Circuit explained that it had "little precedent" in the area and therefore discussed the rule at some length "to provide district courts as much guidance as possible regarding the scope of permissible conduct under this rule."[12]  The Circuit went on to explain that any "'discussion of the penal consequences of a guilty plea as compared to going to trial is inherently coercive, no matter how well-intentioned.'"[13]  The Circuit reasoned that any "such advice should come from the defendant's lawyer, not from the court."[14]

In light of this new teaching from the Tenth Circuit, the court has no choice but to grant Mr. Nikols petition — as the government agrees in its most recent submission.[15]  After defense counsel stated that it was "a good idea," the court did mention the possible consequences of going to trial versus pleading guilty during the course of this long-running case.  The statement was made in the course of a detention hearing, at which the seriousness of the charges was a proper subject for court comment.  Nonetheless, because the statement had implications for Mr. Nikols decision to plead guilty, it appears to transgress the boundaries that the Tenth Circuit has staked out.  The court, therefore, has no choice but set his plea aside.

In taking this action, the court is under no illusions about the likely consequences.  The government has outlined in its pleadings what appears to be an overwhelming case again Mr. Nikols.  In light of that fact, Mr. Nikols's decision to withdraw his plea and go to trial appears likely to produce nothing other than a quadrupling of his time in prison.  Once that happens, this court may well face another § 2255 motion, in which Mr. Nikols claims that his attorneys were

---

[12] *Id.* at *1.

[13] *Id.* at *10 (quoting *United States v. Johnson*, 89 F.3d 778, 783 (11th Cir. 1996)).

[14] *Cano-Varela*, 2007 WL 2285861 at *11.

[15] Response Order Show Cause (Docket No. 31).

ineffective in failing to explain to him the devastating consequences of proceeding to trial. The irony of such a claim would be that Mr. Nikols has had some of the best possible defense attorneys advising him along the way. Indeed, it was only because of concern about a spurious ineffective assistance of counsel claim that the court entered onto the record information about the Sentencing Guidelines in the first place.

But that is a problem for another day. Today, the only issue before the court is whether to grant Mr. Nikols's § 2255 petition to withdraw his plea. The court finds that it must grant the petition.

## CONCLUSION

Pursuant to its authority under 28 U.S.C. § 2255, the court hereby GRANTS Mr. Nikols's motion to vacate his sentence and to set aside his plea of guilty. Accordingly, Criminal Case No. 2:04-CR-00786 PGC is reopened and is associated with this petition, Civil Case No. 2:06-CV-00889 PGC. The Clerk's Office is also directed to reassign these cases to a new judge. The court also orders that the indictment again Mr. Nikols be reinstated. A new trial date and associated deadlines will be set as soon as is practicable.

Current counsel of record in the criminal case (Mr. Platt for the government and Mr. Chesnoff for Mr. Nikols[16]) are directed to promptly contact the newly assigned judge regarding future scheduling in this matter.

---

[16] The court understands that Mr. Chesnoff and Mr. Nikols have recently been involved as adverse parties in a civil action in the Third District Court for the State of Utah regarding alleged non-payment by Mr. Nikols of a portion of a $350,000 retainer in this case. *See Goodman & Chesnoff v. Nikols*, State Civil No. 050921826. If this litigation has impaired the attorney-client relationship to the point where further representation by Mr. Chesnoff is impractical, that matter can be pursued by way of a motion to withdraw as counsel filed before the new judge handling the criminal case.

SO ORDERED.

DATED this 12th day of October, 2007.

                BY THE COURT:

                _____
                Paul G. Cassell
                United States District Judge